■ DANTE SMITH et al., Respondents, v 2328 UNIVERSITY AVENUE CORP. et al., Defendants, and NL INDUSTRIES, INC., Appellant. [859 NYS2d 71]—

Order, Supreme Court, Bronx County (Lucindo Suarez, J.), entered on or about October 12, 2007, which denied the motion by defendant NL Industries, Inc. to dismiss the complaint as against it, unanimously reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment in favor of defendant NL Industries dismissing the complaint as against it.

This is an action for damages for injuries sustained by the infant plaintiffs as the result of their exposure to lead-based paint in the apartment where they resided between 1995 and 2001. While the litigation was pending, NL Industries was identified as the manufacturer of the paint pigments containing the lead used to make the paint that allegedly poisoned the infants; a second amended complaint alleged causes of action against NL for negligence and strict products liability.

The dangers to young children from exposure to lead-based

paint are well known (*see Matter of New York City Coalition to End Lead Poisoning v Vallone*, 100 NY2d 337, 342-343 [2003]). New York City has prohibited the sale and use of lead paint for residential interiors since 1960 (*see* NY City Health Code [24 RCNY] § 173.13), and requires the owners of multiple dwelling units to abate this hazard by remediating the condition in apartments occupied by children under age seven (*see* Administrative Code of City of NY § 27-2056.3). Even though it is the responsibility of the owners of affected buildings to remediate the lead conditions in any unit where a child of six or younger is living, these plaintiffs also demand recovery from the entity that allegedly produced the lead-based paint pigments to which the infants were exposed.

NL stopped manufacturing lead pigments decades ago. Any interior lead paint present in plaintiffs' home was applied before 1960, i.e., before the manufacture, sale and distribution of lead-based pigments and/or paint, and its use in residential units, was outlawed. While manufacturers of defective products may be held strictly liable for injury caused by their products, i.e., they may be liable regardless of privity, foreseeability or reasonable care and a product may be considered defective due to mistake in the manufacturing process, defective design or inadequate warnings about the use of the product (*Sprung v MTR Ravensburg*, 99 NY2d 468, 472 [2003]), the paint pigments created by NL were not inherently dangerous to adults and only became so to young children upon deterioration in the form of peeling paint and dust, which presupposes a lack of proper maintenance by the owner and/or manager of the property.

Plaintiffs do not allege any specific defect in the design of the paint pigments manufactured by NL. It is their position that since all lead is hazardous to children, any lead pigment used in interior residential paint must, by implication, be defective notwithstanding the fact that the manufacturer of the lead component did not have exclusive control of the risk, the paint manufacturer decided which and how much pigment to use, and control of the risk passed to the residential landlord once the paint peeled and flaked, thereby becoming hazardous through possible ingestion or inhalation. At that point, the owners or landlord could control the risk by proper maintenance of their property (*Brenner v American Cyanamid Co.*, 263 AD2d 165, 172-173 [1999]).

"New York does not impose a duty upon a manufacturer to refrain from the lawful distribution of a non-defective product" (*Forni v Ferguson*, 232 AD2d 176, 177 [1996]). The paint pigments manufactured by NL were not defective at the time they

were created, nor was distribution thereof prohibited until 1960. Any problems with lead-based paint arise only after years of inadequate maintenance of the premises by the owner. Under these circumstances, a manufacturer of a product may not, as a matter of law, be found liable for harm inflicted some 50 or more years after its creation, especially in light of the duty of the landlord to abate any existing lead conditions in apartments inhabited by young children.

"In order to establish a prima facie case in strict products liability for design defects, the plaintiff must show that the manufacturer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury" (*Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 107 [1983]). The harm that plaintiffs allege is not only far too remote from NL's otherwise lawful commercial activity to hold it accountable, but is also attributable to intervening third parties (*see People v Sturm, Ruger & Co.*, 309 AD2d 91, 103 [2003], *lv denied* 100 NY2d 514 [2003]). Concur—Lippman, P.J., Mazzarelli, Williams, Sweeny and Acosta, JJ.